HON. F. J. MOSES, CHIEF JUSTICE. (a)
HON. A. J. WILLARD, ASSOCIATE JUSTICE.
HON. S. L. HOGE, ASSOCIATE JUSTICE.

---

## THE STATE vs. MARTIN BAILEY AND CHARLES BAILEY.

The Supreme Court has no power, in a criminal case, to set aside the verdict of a jury and grant a new trial, upon the ground that the verdict is unsupported by evidence.

A confession made by the prisoner was received in evidence, but upon its appearing that it had been obtained by undue means, the presiding Judge ruled it out, and in his charge to the jury instructed them "that the confession was incompetent as evidence, and had been ruled out." *Held*, That this was equivalent, in effect, to an instruction to the jury, that the confession was not to be considered by them, or to have any weight or influence in their deliberations.

The presiding Judge stated, in his report, that he "instructed" the jury relative to the proper inference of fact to be drawn from certain portions of the evidence. *Held*, That it was not a necessary or reasonable inference, from the report, that the Judge did more than communicate his impressions, leaving the jury to accept or reject them; and, therefore, although an instruction as to a material fact that virtually displaces the proper functions of the jury is error, yet that no such error was committed in this case.

(a) During the latter part of the Term.

1

IN THE DISTRICT COURT, LAURENS, MAY TERM, 1868.

Every thing necessary to a full understanding of this case is stated in the opinion of the Supreme Court.

*Sullivan*, for appellant.

*Todd*, Deputy Solicitor, contra.

Dec. 23, 1868. The opinion of the Court was delivered by

WILLARD, A. J. Martin Bailey, one of the defendants, appeals from a conviction at Laurens District Court, May Term, 1868. Charles Bailey and two of the children of Martin Bailey were detected in the possession of stolen property, tending to fix upon them the charge of a larceny.

Certain circumstances tended, as was thought, to attach suspicion to Martin Bailey. A confession made by Martin was given to the jury; but upon its being discovered that there were grounds for supposing that it had been obtained by undue means, the Judge instructed the jury that the confession was incompetent.

A question of venue was raised. The evidence left to inference the question whether the place where the larceny was committed was within the District of Laurens. The Judge says: "I thought that he, (the witness,) living in the District, near to Clinton, and attending to Mrs. Holland's (the complainant's) business, though he did not say that Mrs. Holland lives in the District, or that the smoke house (from which the property was stolen) was in this District, the only inference that could be reasonably drawn was, that Mrs. Holland's smoke house was in this District, and so instructed the jury."

The Judge charged the jury "that the confessions of Martin were incompetent as evidence, and had been ruled out; that the only circumstances that could lead them to conclude that Martin was engaged in the affair was, that the other three were his children, and that a fourth man was seen, but made his escape; that this was a suspicious circumstance, but did not amount to proof of guilt." The jury found a verdict of guilty, as to both defendants.

The first ground of appeal is, that there was no evidence against Martin to found a verdict of guilty upon. The authority of this Court to grant a new trial, upon the ground that the verdict is un-

supported by evidence, is directly involved in the question thus raised.

The late Court of Appeals possessed undoubted power in such a case; and the present appeal was taken on the supposition that that Court would hear the case.

The foundation of the authority of this Court is Section 4, Article IV, of the Constitution, and is in the following words : " The Supreme Court shall have appellate jurisdiction only in cases of Chancery, and shall constitute a Court for the correction of errors at law, under such regulations as the General Assembly may, by law, prescribe." A certain limited and defined original jurisdiction is conferred by the same Section, but having no bearing on the present question. Section 1, Article IV, partitioned the judicial power between the Supreme, two Circuit Courts, and certain local and subordinate Courts. Section 4 marks out the appropriate sphere of the Supreme Court under this partition of judicial power; and Section 15 defines the proper jurisdiction of Circuit Courts as follows : " The Courts of Common Pleas shall have exclusive jurisdiction in all cases of divorce, and exclusive original jurisdiction in all civil cases and actions *ex delicto* which shall not be cognizable before Justices of the Peace, and appellate jurisdiction in all such cases as may be provided by law. They shall have power to issue writs of *mandamus*, prohibition, *scire facias*, and all other writs which may be necessary for carrying their powers fully into effect." Section 18 declares: "The Court of General Sessions shall have exclusive jurisdiction over all criminal cases which shall not be otherwise provided for by law." Section 9, Article XIV. declares as follows: " The General Assembly shall provide for the removal of all causes which may be pending when this Constitution goes into effect, to Courts created by the same." .

Laying out of view matters originating in a Court of Equity, and which come here by appeal, and it is not difficult to understand, in regard to all actions and criminal proceedings, the relation of the Supreme and the Circuit Courts. The former is a Court for the correction of errors at law, and the latter Courts of general original jurisdiction.

When power over a verdict, to the extent of setting it aside, as against law and evidence, is not derived from statute authority, it resides in, and properly appertains to, a Court of original jurisdiction, and not to one deriving its jurisdiction through a writ of error.

The Court of King's Bench, at common law, exercised this power as an incident of its original jurisdiction in criminal cases. Blackstone says, (Com., Book 4, p. 361): "Yet, in many instances, where, contrary to evidence, the jury have found the prisoner guilty, their verdict hath been mercifully set aside, and a new trial granted by the Court of King's Bench;" and that it was, at common law, denied to a Court having authority to correct error at law, appears sufficiently clear from the following citation from the same author, (Book 3, p. 406): "The writ of error only lies upon matter of law, arising from the face of the proceedings; so that no evidence is required to substantiate or support it, there being no method of reversing an error in the determination of facts, but by an attaint, or a new trial, to correct the mistakes of a former verdict."

The nature and antiquity of the general power of Courts over verdicts is illustrated by the following observation from Coke upon Littleton (227, *a.*): "A verdict finding matter incertainly and ambiguously is insufficient, and no judgment shall be given thereon."

The Constitution has conferred upon the Courts of General Sessions and Courts of Common Pleas original powers, as ample as those appertaining to the Courts of King's Bench and Common Pleas of Great Britain, and we may fairly advert to the common law powers of those Courts to determine what are the necessary implications from so enlarged a grant. We have no difficulty in recognizing the power of the Court over verdicts as clearly embraced in this grant. We would naturally conclude that, in a partition of jurisdiction, that which properly appertained to one of the members would be denied to the other in the specific form conferred upon the first. As, for instance, if the particular power in question appertained to Courts of original jurisdiction, it would be denied to one exercising appellate jurisdiction alone. If, on the other hand, it appertained to the jurisdiction capable of correcting errors at law, it must be denied to the Court of original jurisdiction.

But it may be said that the Court of General Sessions may exercise this power, as incident to its original jurisdiction, and yet no inconsistency exist in its exercise, as a branch of appellate jurisdiction. It would be an anomaly to conceive the power of setting aside verdicts for matters of fact conjointly exercised by the Courts of original and appellate jurisdiction, neither sanctioned at common law, nor by the former practice of this State. Formerly, in this

State, the Circuit Judges met in bank and granted new trials for both matter of fact and law. They thus sat in the exercise of original jurisdiction, and not strictly as an appellate Court, in the distinct and separate import of that term. While that power was exercised in bank it was not exercised by the Judges separately. In process of time the jurisdiction thus exercised in bank was erected into a separate Court, by statute authority, under which the Court of Appeals properly continued the same control over verdicts that had been exercised by the Circuit Judges, and the right to set verdicts aside became dormant in the Circuit Courts. This condition of things was brought about by statute authority, and was legitimate. The case now is different. The Constitution has employed well known terms of the common law to indicate the separate jurisdictions of the Courts, and has manifested an unmistakable intent to give to these Courts certain characteristics differing from the Courts that have been displaced. We must not, therefore, expect to find the key to the meaning of the Constitution in the statutes under which the displaced judiciary was organized, but in the well understood import of the terms used, as known to our system of common law.

It will be observed that there is an express denial to the Supreme Court of appellate jurisdiction, except in cases arising in Chancery. The manifest object of this expression was to prevent the exercise, under the name of appellate power, of all jurisdiction in cases at law foreign to the common law notion of a Court for the correction of errors; and, as such powers were in exercise by the Court of Appeals, we must conclude that the clause in question acts specifically on those powers by way of inhibition.

A Court for the correction of errors at law, as known at common law, is one that has such jurisdiction as a writ of error can confer upon it. The Legislature so apprehended the intent of the Constitution, and have provided that judgments shall be brought into this Court by writ of error, (14 Stat., p. 12, Section II); and, as we have seen, upon the authority of Blackstone, the power to set aside verdicts for matter of fact does not appertain to such a jurisdiction.

That the view here presented was entertained by the Legislature may be gathered from the following clause of the Section (II) just cited: "There shall be no reversal, on such a writ of error, for error in ruling any plea in abatement other than a plea to the jurisdiction of the Court, or for any error in fact;" and, also, from the grant

to the Circuit Courts, in express terms, of the right to grant new trials; (14 Stat., p. 136.)

This would seem to conclude all further discussion ; but it has been said that in criminal cases the juries are, to some extent, and in certain cases, judges of the law as well as the fact, and the question is asked whether an error at law, committed by the jury, is not as clearly within the jurisdiction to correct errors at law as the errors of a Judge or Court? The answer to this is, that at common law no such idea is recognized, and it would be a startling novelty for a judicial body to originate it. Besides, where the jury have, to any extent, been clothed with power of judging in matter of law, it has been done to remove their verdict from the control of the Judge, and to commit the right of parties to the dictates of natural law that resides in the breast of the citizen, rather than to the deductions of formal and scientific law, as administered by Courts. To allow verdicts in such cases to be reviewed, as to the matters of law entering into their composition, would not only subject them more thoroughly and effectually to the scrutiny of the Courts—thus defeating the very object in view in reposing this especial confidence in the jury—but would be impracticable, as requiring the Courts to analyze that which is incapable of analysis, namely, a general verdict, the mixed result of conclusions of law and fact.

No ground is found in theory or practice for such a conclusion, and we are constrained—though, under the circumstances of the present case, with the greatest reluctance—to conclude that this Court has no power to set aside the verdict on the first ground of appeal.

The second ground of appeal arises out of the confession put in evidence, but afterwards rejected by the Court. The appellant claims that the Judge should have instructed the jury that it was not to be considered by them, or to have any weight or influence in their deliberations. We regard the charge of the Judge as equivalent, in effect, to the proposition contended for. Informing the jury that this confession was "incompetent as evidence, and had been ruled out," was a distinct instruction, which it is not conceived possible to have been erroneously interpreted by them. This exception is not well taken.

The third and last ground of appeal is, that " the venue was not found." The counsel for the appellant evidently understood that portion of the charge of the Judge that related to the sufficiency of the evidence on the point of venue as virtually taking the question of venue from the jury and determining it as matter of law. It is

true that the report says that the Judge "instructed" the jury relative to the proper inference of fact to be drawn from certain portions of the evidence. It is equally true that an instruction, as to a matter of fact material to the issue, that virtually displaces the proper functions of the jury, is error. But it is not a necessary or reasonable inference, from the report, that the Judge did more than communicate to the jury his impressions as to the force of the evidence, leaving them free to accept or reject it as it accorded or differed from their own deductions. Had the Judge given such an erroneous charge as is imputed by this ground of appeal, it is fair to conclude that the ground of appeal would have been modified in form so as to make such erroneous instruction the specific ground of appeal.

The third ground of appeal is not well taken.

Many considerations in favor of the defendant are earnestly pressed upon the Court, by the counsel for the defendant, that are worthy of grave consideration before the tribunal or authority competent to weigh them. Some of them are doubtless proper for Executive consideration. It is doubtless a hardship that, in the change of the structure of the Courts, a right of appeal to the revisory power should be lost, but it by no means follows that the case is remediless because we are not authorized to apply the remedy.

It is ordered and adjudged that the appeal be dismissed.

*Hoge*, A. J., concurred.