[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO REARGUE
The plaintiff filed two lawsuits making the same claim and requesting the same relief against a Quebec defendant. The method of service differed in each of the cases. The defendant filed a motion to dismiss in file 0059601 on the basis of an alleged violation of the Hague Convention and there was a statement in the motion to the effect that that suit should be dismissed because it was "identical to another lawsuit bearing Docket No. CV01-0559733," (i.e. this suit). Apparently, this later comment was meant to refer to the prior pending action doctrine, although the memorandum attached to the motion did not pursue this ground. The court may be mistaken but in the May 28, 2002 argument on the motion in "0559601" it is the court's memory and understanding that the peculiarities of Canadian Provincial law were not to be considered by the court although an April, 2002 motion was filed by defense counsel to the effect that even if Canada acceded to service by mail under the convention, Quebec had not done so.
In any event, the court denied the motion to dismiss in 0559601 on the basis that mail service made in that file was adequate under the Hague Convention.
In the file now before the court, Docket No. 559733, the defendant filed a motion to dismiss also claiming service had not been made in accordance with the Hague Convention and as an "addendum" to this motion a motion to dismiss on the grounds that this suit was "duplicative of an identical lawsuit" (i.e. 559601) brought in this jurisdiction. Defense counsel also presented to the court a letter from a Montreal lawyer which convinced the court that mail service would not in fact bring the defendant before this court because the Hague Convention had not been adopted by the Province of Quebec. However, the court denied the motion to dismiss insofar as it was on a claim of inadequate service because it ascertained upon an examination of this file, that in fact service had been made by a bailiff on the defendant in Quebec which satisfied the CT Page 16456 requirements of the internal law of Quebec. In the opinion, the court said that because it now was of the opinion that it had been incorrect in concluding that mail service was proper in the other file (#0559733), that file should perhaps be dismissed since the present file was not subject to dismissal and the prior pending action doctrine was waiting in the wings; that is, there was no dispute that the suits, apart from the method of service, were otherwise identical. In any event, the court did not dismiss this suit on the inadequate service argument and since plaintiff's counsel represented he would withdraw one of the suits depending on the court's decision, did not directly concern itself with applying the prior pending action doctrine. That doctrine was not the central issue in dispute between the parties — prior arguments really centered the Hague Convention and its applicability.
Even though plaintiffs counsel prevailed in its opposition to the motion to dismiss based on the claim of inadequate service, he now files a motion to reargue. The motion is rather unusual in that it merely seeks to have the court consider two different arguments for denying the motion other than the one the court relied upon but does not choose to have the court its ultimate conclusion that the motion be denied.
The defendant understandably takes great umbrage at all of this in its reply memorandum. Counsel argues that no case could be found where a motion to reargue was permitted under these circumstances and objects to the court "massaging" the record by suggesting its previous decision in the companion file was wrong and, therefore, that is the case that should really be dismissed rather than the one now before the court.
The court finds the defendant's position somewhat surprising since the court realized the error of its ways only upon examining the Montreal lawyer's letter which was submitted by defense counsel and actually relied upon in argument in this case. What defense counsel appears to be doing is to engage in a seriatim analysis which asks the court to ignore the fact, as previously noted, that the prior pending action is waiting to be applied. Under the circumstances of this case it at least can be argued that the prior pending action doctrine is being used not as a shield but as a sword. In other words, this is not a case where the plaintiff has brought basically the same suit in two different courts or the same court or placed a different label on what is essentially the same suit. Nor is this a case where for some reason the plaintiff, by bringing two separate suits, will, in effect, harass the defendant by requiring two separate exercises of pretrial practice with the specter of two separate trials.
This is a case where (1) the plaintiff wants a single trial on the CT Page 16457 merits to take place (2) where the plaintiff seems to recognize that the prior pending doctrine is applicable and (3) where the plaintiff, as noted, intends to withdraw one of these matters based in part on the court's decision on the motion to reargue. However, the plaintiff does not want to be prejudicial at the end of the appellate trial by the mistake of a trial court (to wit this one) in deciding the predicate issue of the adequacy of service. Understandably, the plaintiff wishes the court to make a complete record as to all the issues that may be relevant to deciding what suit to withdraw and to prepare the record for appellate review.
In light of this background, the prior pending action doctrine should be reviewed more closely. The court, in In Re Jessica M, 71 Conn. App. 417,427 (2002) noted that the prior pending action doctrine "does not implicate subject matter jurisdiction;" a court cannot properly even raise the doctrine sua sponte, Conti v. Murphy, 23 Conn. App. 174, 178
(1990). More to the point in Beaudour v. Town Oil Co., 207 Conn. 575, 584
(1988) referring to the prior pending action doctrine said:
 "This rule of justice and equity is always applicable when two suits are virtually alike and are brought in the same jurisdiction . . . We have explained the doctrine as follows `It is so, because there cannot be any reason to or necessity for bringing the second (law suit) and, therefore, it must be oppressive and vexatious . . . `The rule forbidding the second action is not, however, one of unbending rigor, nor of universal application, nor a principle of absolute law. . ."
In other words, the prior pending action is an equitable doctrine based on notions of fairness and a court in such a context must act in an equitable manner, keeping in mind a principle that analytically precedes the prior pending action doctrine — in this jurisdiction it is desirable that claims be tried on their merits and resolved on their merits in the appellate courts.
The court is also aware of the definition of "equity" given in a very general reference source which does not diminish the value of the observation.
"equity . . . the mitigating principles, by the application of which substantial justice may be obtained in particular cases wherein the prescribed or customary forms of ordinary law seem to be CT Page 16458 inadequate." Ballentine's Law Dictionary 3d edition.
In light of the foregoing, the court will take the following position (1) it will try to address the new issues raised by the plaintiff in its motion to reargue and (2) it will order that if the course of action taken by the plaintiff is to withdraw one of these suits, the file in that suit shall be made an exhibit in the suit not withdrawn so that the Appellate Court will have a complete record of the service actually made — this court is aware of no claim that the service purported to be made in either suit whether or not it is adequate, was not made as purported. Thus hopefully, any error this court may have made in its analysis of the adequacy of service issue will not necessitate a finding that the matter ultimately tried is not properly before the Appellate Court on its merits. This would not preclude an Appellate Court from concluding, of course, that service in neither case was adequate.
What then are the two new issues the plaintiff raises in the motion to reargue. she maintains (1) that although the province of Quebec has not adopted the Hague Convention the "trend of the Quebec Supreme Court is to recognize the application of such treaties" (2) if in fact Quebec is not bound by the convention legislatively or by judicial fiat, then no treaty exists in Quebec regarding international service of process and thus "service on the Motor Vehicle Department pursuant to the Connecticut General Statutes § 52-59d is adequate."
Addressing the new issues raised by the plaintiff in the motion to reargue, the court does not agree with the plaintiffs positions.
 (a)
The province of Quebec has not legislatively exacted into law the provisions of the Hague Convention but the plaintiff argues that "the trend of the Quebec Supreme Court is to recognize the application of such treaties when the Executive Council (not the legislature) of Quebec issues a "decree" declaring itself bound by the treaty. Apparently the Executive Council of Quebec in March, 1988 declared itself bound by the Hague Convention. The plaintiff relies on an opinion of a Montreal lawyer for this proposition. However, the position of the lawyer is much more equivocal on the issue before the court. After analyzing Oldham RiverSociety v. Canada (1992) 1 S.C.R. 3, the lawyer says that "the debate as to the legal value of a decree has not yet been definitely settled in Quebec . . . However, when presented with a decree or order, the Supreme Court will usually tread with care and will only intervene where an Executive Order is manifestly ultra vires. However, the courts of Quebec do not appear to tend towards implicit recognition of unimplemented CT Page 16459 treaties." Then in his conclusion, without further explanation, it is said: "However, based upon the Supreme Court's decision in Oldhan River an argument could be made that by enacting a decree whereby it declares itself bound by the Hague Convention, the Quebec Government has manifested its intent to recognize its application." Just as equivocally at an earlier point the lawyer comments that . . . "although the Executive Branch of the Quebec government has declared itself bound by the Hague convention, the Legislative branch has manifested no intention on implementing it within the law of the land. However, the Judicial Branch of the Quebec government will not necessarily discard any recourse by a person under a treaty." But then a case is cited in which a Quebec Superior Court judge in fact said in dicta that the Hague Convention need not be taken into account because it had not been formally (presumably legislatively) enacted in Quebec. Furthermore, the Montreal lawyer indicated to plaintiffs counsel, Article 92 (14) of the British North America Act of 1867 specifically provides that "the administration of justice in the provinces including the constitution maintenance and organization of provincial courts, both of civil and of criminal jurisdiction, and including procedure in civil matters in those courts is within the exclusive legislative realm of each province." (His emphasis not mine.) And the Oldham case which is so heavily relied upon is a suit against Canada not against an individual. Interestingly, the court would also note in this regard the statement in the letter submitted by another Montreal lawyer on behalf of the defendant which the court relied upon in its earlier decision rejecting the viability of mail service. There it is said that: "The government of Quebec issued an executive decree, No. 491-88 declaring itself bound by the Hague Convention, but such a decree would only bind the government in lawsuit instituted against it. Such decrees are not legislative enactments and therefore (do) not constitute the law of the land in Quebec." There is another technical problem with the plaintiffs position especially in light of the plaintiffs failure to attach a copy of the actual decree of the Quebec Executive Council which purportedly acceded to the Hague Convention. If one examines the articles of the Hague Convention carefully it seems clear to the court that Article X which authorizes sending judicial documents by mail is a severable part of the treaty. In other words, states adopting the Hague Convention can object to this provision of Article X set forth in subsection (a). What does it mean to say then that the Executive Council declared itself bound by the treaty — does it mean Quebec consider itself bound by provisions authorizing mail service on individuals? In any event, the court does not accept the plaintiffs argument regarding the propriety of service by mail in light of what is characterized by the "trend" of recent provincial decisions.[1]
 (b) CT Page 16460
The plaintiff argues that if the court concludes Quebec is not bound by the Hague Convention, then no treaty exists thus service on our motor vehicle department pursuant to § 52-59d is adequate. That statute provides:
 "(a) Notwithstanding any provision of the General Statutes relating to service of process shall not be served outside the United States of America in violation of any applicable treaty or convention, including without limitation the Hague Convention or Service of Process Abroad."
"Conversely" the plaintiff argues if Quebec is not bound by the convention then our state statutes relating to service of process control and pursuant to § 52-62, non-resident defendants "shall be deemed to have appointed the commissioner of Motor Vehicles as his (sic) Attorney and to have agreed that any civil process in any action . . . may be served upon the commissioner and shall have the same validity as if served upon the non-resident personally."
No case is cited for this broad proposition. It is difficult to understand how Quebec would recognize that a foreign judgment would be effective against one of its citizens without compliance with its own code of civil procedure. States in the federal union may be so bound but not foreign governments. The court has reason to speculate in light of the cases cited and discussion engaged in by the lawyer whose views the plaintiff has brought to the court's attention that bailiff service in Quebec even if not authorized by any treaty or convention regarding foreign suits may be recognized as adequate in Quebec but that is not the problem before the court as to this precise argument. In fact, the argument now raised raises the whole question of whether under international law, prior to or in the absence of the applicability of the Hague Convention, service under statute like § 52-59d would be recognized as a valid mechanism by foreign states for asserting jurisdiction over its nationals and thus permitting any judgment to be enforced. But this question has not been briefed let alone addressed by counsel.
The court, therefore, does not accept either of the positions advanced by the plaintiff as alternative grounds to support its earlier decision to deny the defendants' motion to dismiss based on inadequacy of service.
Finally, the defendants are now pressing their prior pending action CT Page 16461 claim in this suit; a motion to dismiss based on that doctrine was made in the other "identical" file (0559601). Both cannot be granted. Therefore, the court will grant the motion to dismiss in this file (0559733) as of January 6, 2003, if (0559601) is not withdrawn. If #0559733 is withdrawn, the court will have no need to act on the motion but will deny the motion under the prior pending action doctrine on the same date in file #0559601.
 ___________________ Corradino, J.